**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Maria Ester Morfin,<br><br>  Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>  Defendant. | No. CV-24-02459-PHX-KML<br><br>**ORDER** |

Plaintiff Maria Ester Morfin seeks review of a final decision by the Commissioner of Social Security denying her application for disability supplemental security income. Morfin argues the Administrative Law Judge failed to properly evaluate opinion evidence. (Doc. 9.) Because the ALJ's disability determination is based on substantial evidence, it is affirmed.

**I.   Background**

  **A. Procedural History**

Morfin filed her application for disability insurance benefits on May 25, 2021. (Administrative Record ("AR") 39, Doc. 7-3 at 17.) In her application, Morfin claimed mental and physical impairments of anxiety, obsessive compulsive personality disorder/obsessive compulsive disorder, back pain, right leg pain, and blurry vision. (AR 333.) After an initial denial on December 23, 2021 (AR 122) and again upon reconsideration (AR 154), Morfin requested a hearing before an ALJ, which was held on January 30, 2023. (AR 99.) Morfin testified at that hearing and again at a supplemental

hearing held on August 11, 2023. (AR 61.) The ALJ issued an unfavorable decision on November 27, 2023. (AR 51.)

### B. Five Step Evaluation Process

The ALJ follows a five-step process to determine whether a claimant is disabled. 20 C.F.R. § 404.1520(a). *See Woods v. Kijakazi*, 32 F.4th 785, 787 n.1 (9th Cir. 2022) (summarizing 20 C.F.R. § 404.1520(a)(4)). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *White v. Kijakazi*, 44 F.4th 828, 833 (9th Cir. 2022). At step three, the claimant must show that her impairment or combination of impairments meets or equals the severity of an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant meets her burden at step three, she is presumed disabled and the analysis ends. If the inquiry proceeds to step four, the claimant must show her residual functional capacity ("RFC")—the most she can do with her impairments—precludes her from performing her past work. *Id*. If the claimant meets her burden at step four, then at step five the Commissioner must determine if the claimant is able to perform other work that "exists in significant numbers in the national economy" given the claimant's RFC, age, education, and work experience. *Id*. at § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*.

Morfin met her burden at step one and two. (AR 41–42.) But after acknowledging Morfin had moderate limitations in understanding, remembering or applying information, and interacting with others, the ALJ found at step three that Morfin's impairments or combination of impairments did not meet or medically equal a listed impairment. (AR 42.) After reviewing Morfin's medical record and symptom testimony, the ALJ found at step four that Morfin had an RFC to perform a full range of work except that she can perform simple and repetitive tasks with "no more than frequent contact with coworkers, supervisors, and the general public." (AR 50.) The ALJ also found Morfin was not capable of performing her past relevant work as a medical billing coder but there are jobs that exist in significant numbers in the national economy that she can perform.

(AR 50.) The ALJ therefore found Morfin not disabled. (AR 51.)

## II.     Standard of Review

The court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). "Substantial evidence is more than a mere scintilla but less than a preponderance" of evidence and is such that "a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005)). The court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001).

## III.    Discussion

Morfin argues the ALJ committed legal error because he improperly rejected the opinions of Dr. Satinder Purewal and Cassondra Diaz de Leon, both of whom treated her for depression and other mental health issues. Morfin also argues the ALJ erred in his handling of opinions from the State Agency consultant Dr. Linda Miller and the prior administrative findings of Drs. Jeremiah Isbell, Elliot Salk, and George Stern. (Doc. 9 at 17–26.)

The most important factors in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the 'relevant . . . objective medical evidence.'" *Woods*, 32 F.4th at 791–92 (quoting 20 C.F.R. § 404.1520c(c)(1)). Consistency is "the extent to which a medical opinion is 'consistent . . . with the evidence from other medical sources and nonmedical sources in the claim.'" *Id*. at 792 (quoting 20 C.F.R. § 404.1520c(c)(2)). The ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each doctor or other source, 20 C.F.R. § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2). The ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial

evidence." *Woods*, 32 F.4th at 792. The ALJ provided sufficient explanations for rejecting the opinions of Dr. Purewal and Diaz de Leon on supportability and consistency grounds. Even if the explanations were insufficient, any error would be harmless. And the ALJ also did not err in addressing the other opinions and findings.

### A. Dr. Satinder Purewal Opinion

Morfin's treating provider Dr. Purewal assessed she would be unable to work due to episodic flareups of her depression, the symptoms and treatment of which would result in absences from work. (AR 549.) The ALJ found this opinion unpersuasive because Dr. Purewal "did not provide any specific diagnosis in conjunction with this assessment"[1] and because "his own treatment notes failed to support such restrictions." (AR 48.) The ALJ also pointed to Dr. Purewal's assessment that Morfin's anxiety improved after quitting her job and she had relatively normal daily functioning. (AR 48.) The ALJ's assessment is supported by substantial evidence.

Dr. Purewal's treatment notes consistently identified Morfin's symptoms of depression, anxiety, and panic. (*See, e.g.*, AR 449, 500, 504, 508.) However, as the ALJ pointed out, Dr. Purewal's treatment notes also record improvements in Morfin's anxiety symptoms after she left her job. (AR 48.) The ALJ found Dr. Purewal's treating notes did not support his assessment that Morfin could not work because they noted Morfin was "doing better" and "stable" on her medications. (AR 48, 499–503.) Although Dr. Purewal's notes show mixed treatment results that could support or deny a finding of disability, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation," as here, "the court must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004).

The ALJ also concluded that Dr. Purewal's opinion was "inconsisten[t] with the medical evidence regarding claimant's mental limitations." (AR 48.) The ALJ considered Dr. Purewal's own treatment notes and the notes of Dr. Gilbert Wong, Morfin's

---

[1] The opinion from Dr. Purewal was made on a form for Morfin's husband to obtain leave from his job. (AR 549.) That form stated Morfin's husband needed to provide "emotional support" and "provide for safety during [Morfin's] episodes of depression." (AR 549.)

ophthalmologist, in making this assessment. (AR 48.) Although the ALJ does not explain the relevance of her ophthalmologist's assessment of her mental condition, an ALJ may find a doctor's opinion inconsistent based on inconsistencies with "the doctor's own clinical findings." *Kitchen v. Kijakazi*, 82 F.4th 732, 740 (9th Cir. 2023) (citing *Tommasetti v. Astrue*, 533 F. 3d 1035, 1041 (9th Cir. 2008)). Accordingly, the ALJ's rejection of Dr. Purewal's opinion is based on substantial evidence.

Moreover, any error in the consistency assessment would be harmless based on the ALJ's lack-of-supportability finding. A harmless error is one that is "inconsequential to the ultimate nondisability determination." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008). Because an ALJ may find an opinion unpersuasive based on either consistency *or* supportability, *Allen v. Kijakazi*, No. 22-35056, 2023 WL 2728857, at *1 (9th Cir. Mar. 31, 2023), and substantial evidence underlay the finding that Dr. Purewal's opinion was unsupported by the medical record, even if error existed it would be harmless.

### B.  Cassondra Diaz de Leon Opinions

The ALJ assessed three opinions from Morfin's treating provider Diaz de Leon as not persuasive. (AR 48–49.) The first opinion dated September 26, 2022 concluded Morfin could not work due to depression, anxiety, inability to focus, impaired judgment and decision making, and insomnia, which would result in missing greater than three days of work per month. (AR 583–86.) The second opinion dated May 2, 2023 concluded Morfin had moderate limitations in understanding information and interacting with others but mostly marked limitations in terms of remembering and applying information, concentrating, persisting in maintaining pace, and managing herself, as well as extreme limitations adapting in the workplace. (AR 819–20.) In evaluating these opinions, the ALJ noted they "affirm[ed] there is no evidence of medical treatment, mental health therapy, or psychosocial supports or a highly structured setting" that effectively ameliorated Morfin's symptoms. (AR 48.) The ALJ concluded these opinions are contradicted by the record, "which demonstrates claimant has displayed and reported

benefits from treatment and improvement in her mental symptoms." (AR 48.) Although Diaz de Leon noted Morfin's anxious and depressed affect (*see, e.g.*, AR 830, 837, 844, 851), Diaz de Leon's records contradict her own opinion. She consistently observed Morfin had normal concentration, memory, and judgment and that Morfin's symptoms improved with medication. (*See, e.g.*, AR 713–15, 718–19, 733–34.) The ALJ's supportability finding was therefore supported by substantial evidence. *Kitchen*, 82 F.4th at 740 (finding substantial evidence where "unremarkable mental status examinations" contradicted "the extremeness of [doctor's] evaluation").

The ALJ also found Diaz de Leon's August 25, 2023 opinion—finding Morfin could not sustain full or part-time work due to her anxiety, depression, and two psychiatric hospitalizations—unpersuasive. (AR 49.) This letter, filed after the hearing, opined Morfin did not have substance abuse issues and her history of alcohol use did not contribute to her depression but was a form of self-medication for her depression and anxiety symptoms. (AR 882.) The ALJ found this opinion unpersuasive because the medical record repeatedly noted Morfin's history of substance abuse, including her self-identified concerns that she had a "mild dependence" on alcohol and was "drinking at unhealthy levels." (AR 677, 681, 683, 693.) An ALJ may find a provider's opinion unsupported where it is "inconsistent with the overall notes and mental status examinations in the record," as the ALJ did here. *Woods*, 32 F.4th at 792–93.

Finally, the ALJ properly considered the consistency of Diaz de Leon's opinions against Diaz de Leon's own records and Morfin's hospitalization records. He noted: Morfin's hospital stays were of "relatively short duration" and she "returned to normal mental status with treatment" following them; Morfin self-reported alcohol use inconsistent with Diaz De Leon's opinion; and Diaz De Leon's own records showed Morfin "was within normal limits" of cognitive functioning and "her medication and treatment regimen were helping" her symptoms. (AR 48–49.) Accordingly, the ALJ's rejection of Diaz de Leon's opinions due to their lack of consistency with her own medical records and others is based on substantial evidence. *See Kitchen*, 82 F.4th at 740.

1  And like with Dr. Purewal's opinion, any error in the consistency analysis would be
2  harmless because because the ALJ properly rejected Diaz de Leon's opinions for lack of
3  supportability and an ALJ may find an opinion unpersuasive based on supportability
4  alone. *Carmickle*, 533 F.3d at 1162; *Allen*, 2023 WL 2728857, at *1.

### C. Drs. Elliot Salk and George Stern Opinions

Morfin also argues the ALJ improperly considered the prior administrative medical findings of Drs. Salk and Stern, who found Morfin's symptoms resulted in moderate limitations interacting with others, concentrating, persisting or maintaining pace, and adapting or managing herself. (AR 130, 150.) The ALJ found these opinions partially persuasive because some of their conclusions were consistent with the medical record, specifically their conclusions that Morfin "has no more than moderate mental limitations resulting from her mental impairments" and could engage in some work. (AR 47.) But he found their conclusions that Morfin is limited to no more than "1 to 2 step tasks" to be overly restrictive given her activities of daily living. (Doc. 47.)

Morfin argues the ALJ committed two errors: erroneously considering her reported activities of daily living and failing to consider the reviewers' assessment that she would do best in a "low stress" setting. (Doc. 9 at 21–22.) She is incorrect.

First, the ALJ properly considered Morfin's testimony reporting her activities of daily living. Morfin testified she performs all personal hygiene tasks, cleans her home, manages her finances, leaves her home several times a week, grocery shops, prepares her own meals, and takes her child to school. (AR 542.) The ALJ found these activities suggest she is not limited to no more than performing one- to two-step tasks because of their complexity. (AR 47.) Morfin argues "[t]hese mundane daily activities do not represent [her] ability to function in a work-like setting" but does not explain why. (Doc. 9 at 21.) An ALJ may appropriately reject a medical opinion describing "extreme" impairments where the claimant "engage[s] in a wide range" of daily activities. *See Stiffler v. O'Malley*, 102 F.4th 1102, 1108 (9th Cir. 2024) Again, "[w]hen the evidence before the ALJ is subject to more than one rational interpretation, the court must defer to

the ALJ's conclusion." *Batson*, 359 F.3d at 1195. As in *Stiffler*, 102 F.4th at 1108, the ALJ could rationally find Morfin's self-reported activities were more complex than the one- to two-step tasks Drs. Salk and Stern required and the court must defer to that conclusion.

Second, Morfin argues the ALJ erred by ignoring Dr. Salk and Dr. Stern's findings that she would "function best in [a] setting with low stress." (AR 128, 130, 150.) But the ALJ did take into account these proposed restrictions, noting Morfin "said she does not handle stress well," yet found this assessment incompatible with her daily activities. (AR 45.) An ALJ is "not required to incorporate evidence from the opinions of [] physicians[] which were permissibly discounted." *Batson*, 359 F.3d at 1197. Accordingly, the ALJ's conclusions were based on substantial evidence.

### D. Drs. Jeremiah Isbell and Linda Miller Opinions

Morfin also argues the ALJ erred in considering the prior administrative findings of Dr. Isbell and hearing testimony of Dr. Miller, which both concluded that Morfin did not demonstrate a need for mental limitations. (AR 48–49.) Nonetheless, Morfin argues the ALJ "correctly" found these opinions "not persuasive." (Doc. 9 at 23.)

It is unclear how Morfin believes the ALJ's purported errors in evaluating these opinions were harmful to her. Morfin appears to have misunderstood the ALJ's opinion, which imposed greater limitations after rejecting these opinions. (AR 48–49.) Morfin has shown no harmful error in the ALJ's evaluation of these opinions.

### E. Source of Limitations

Finally, Morfin argues it is unclear how the ALJ formed his determination because he rejected every treating medical source, medical examiner, and consultative examiner opinion and only partially credited the opinions of the state agency psychologists. (Doc. 9 at 23.) She argues it was improper to rely on these opinions when they did not fully review her medical records. (Doc. 9 at 24.) However, the ALJ reviewed these sources for consistency with the whole medical record. *Cf. Brunen v. Comm'r of SSA*, No. CV 22-00735-PHX-CDB, 2023 U.S. Dist. LEXIS 142952, at *94 (D. Ariz. Aug. 13, 2023)

("[T]hese medical sources did not have access to the complete treatment records of NP Lazaro and Dr. Jain, and the ALJ does not adequately address how the reviewing physician's opinions were consistent with the evidence in entire record.").

Morfin also argues the ALJ improperly relied on these opinions over those of treating medical providers. (Doc. 9 at 24.) But under revised social security regulations, courts no longer "accord[] special deference to the opinions of treating and examining physicians." *Woods*, 32 F.4th at 792; 20 C.F.R. § 404.1520c(a).

For the reasons described above, the ALJ's decision is affirmed.

Accordingly,

**IT IS ORDERED** affirming the decision of the ALJ.

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 22nd day of August, 2025.

Honorable Krissa M. Lanham
United States District Judge

- 9 -